**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

WILLIAM HUSEL,                          Case No. 2:23-cv-10845

        Plaintiff,                          Hon. Stephen J. Murphy, III

v.

TRINITY HEALTH CORPORATION,

        Defendant.

_____

## DEFENDANT TRINITY HEALTH CORPORATION'S MOTION TO DISMISS

Defendant Trinity Health Corporation, through its counsel, The Miller Law Firm, P.C., moves to dismiss Plaintiff's Complaint in its entirety for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

In support of this Motion, Defendant relies upon the concurrently filed Brief in Support and attached Exhibits.

Defendant's counsel personally met with Plaintiff's counsel on June 9, 2023 and sought Plaintiff's concurrence in the relief requested in this Motion. Concurrence was denied necessitating this Motion.

WHEREFORE, Defendant Trinity Health Corporation respectfully requests that this Court grant its Motion, dismiss Plaintiff's Complaint in its entirety with prejudice, and award Defendant any and all other relief that is necessary and just.

Respectfully submitted,

**THE MILLER LAW FIRM, P.C.**

 */s/ E. Powell Miller (P39487)*
E. Powell Miller (P39487)
Kevin F. O'Shea (P40586)
950 W. University Dr., Suite 300
Rochester Michigan 48307
(248) 841-2200
epm@millerlawpc.com
kfo@millerlawpc.com

Dated: June 13, 2023                 *Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I certify that on the foregoing document was served on all parties or their counsel of record through the Court's CM/ECF system, which will send notification of this filing to all registered users or, if they are not registered users, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

 */s/ E. Powell Miller*

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

WILLIAM HUSEL,

       Plaintiff,

v.

TRINITY HEALTH CORPORATION,

       Defendant.

Case No. 2:23-cv-10845

Hon. Stephen J. Murphy, III

---

## BRIEF IN SUPPORT OF DEFENDANT TRINITY HEALTH CORPORATION'S MOTION TO DISMISS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................. iii

MOST CONTROLLING AUTHORITIES ............................................................iv

STATEMENTS OF ISSUES PRESENTED ............................................................v

INTRODUCTION ...............................................................................................1

STATEMENT OF FACTS ....................................................................................2

ARGUMENT ......................................................................................................6

PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED FOR
FAILURE TO STATE A CLAIM UNDER FED.R.CIV.P. 12 (B)(6) .......................6

STANDARD OF REVIEW ...................................................................................6

I.    TRINITY HEALTH'S STATEMENTS TO THE PROSECUTOR ARE
      ABSOLUTELY PRIVILEGED, BARRING PLAINTIFF'S CLAIM ...........7

II.   THE COMPLAINT'S ALLEGATIONS, TAKEN AS TRUE, DO NOT
      PLEAD THE ABSENCE OF PROBABLE CAUSE ....................................9

      A.    Husel's Complaint Does Not Allege Sufficient Facts to Overcome the
            Presumption of Probable Cause Element of His Claim .......................9

            1.    The Grand Jury's Indictment of Husel on Twenty-Five
                  Counts of First-Degree Murder Establishes Probable
                  Cause ........................................................................................10

            2.    Husel's Attempt to Rely on Supposedly Exculpatory
                  Material Fails ...........................................................................13

      B.    The Materials Selectively Quoted in Husel's Complaint Establish that
            the Prosecutor Conducted a Full Investigation Dependent on Evidence
            from Non-Trinity Health Sources.......................................................15

1.   The Office of Prosecutor Ronald O'Brien Conducted
      a Full Investigation into Husel's Pain Medication
      Dosing ......................................................................................16

2.   Prosecutor Tyack Conducted an Additional, Independent
      Investigation of Husel's Conduct After His Election ................19

III.   PLAINTIFF'S  CLAIM  DOES  NOT  SATISFY  THE  LEGAL  TEST   FOR
       PLAUSIBILITY ...........................................................................20

CONCLUSION ...................................................................................25

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................7

*Bickerstaff v. Lucarelli*, 830 F.3d 388 (6th Cir. 2016) .................................... 10, 13

*Brunswick v. City of Cincinnati*, No. 1:10-cv-617,
    2011 WL 4482373 (S.D. Ohio Sept. 27, 2011) .......................................17

*Carmical v. McAfee*, 7 S.W.3d 350 (1999) ...........................................11

*Daher v. Cuyahoga Cmty. Coll. Dist.*, No. 109719,
2021 WL 2588927 (Ohio Ct. App. June 24, 2021) ...................................9

*Dailey v. First Bank of Ohio*, No. 04AP-1309, 2005 WL 1483678 (Ohio Ct. App.
    June 23, 2005 ..................................................... 8, 12, 14

*Deoma v. Shaker Heights*, 68 Ohio App.3d 72 (Ohio Ct. App. 1990).............. 10, 12

*Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) .........................................7

*Dressler v. Rice*, No. 1:15 cv 606,
    2017 WL 3033877 (S.D. Ohio July 18, 2017)...........................................17

*Garner v. Harrod*, 656 F.App'x 755 (6th Cir. 2016) .............................................12

*Gonzalez v. Kovacs*, 687 F.App'x 466 (6th Cir. 2017) ..................................... 12, 13

*Gregory v. Shelby Cnty.*, 220 F.3d 433, 446 (6th Cir. 2000).................................22

*Harris v. United States*, 422 F.3d, 322 (6th Cir. 2005) .....................................11, 12

*Kostrzewa v. City of Troy*, 247 F.3d 633 (6th Cir. 2001) ...........................................6

*M.J. DiCorpo, Inc. v. Sweeney*, 634 N.E.2d 204 (Ohio 1994) ...............................9

*Musleh v. Am. S.S. Co.*, 326 F.Supp.3d 507 (E.D. Mich. 2018)...............................7

*Reinoehl v. Trinity Universal Ins. Co.* (1998), 130 Ohio App.3d 186 ....................12

*State Farm Mut. Auto. Ins. Co. v. Slade Healthcare, Inc.*,
    381 F.Supp.3d 536 (D. Md. 2019).........................................................2, 7

*Watermark Senior Living Ret. Comtys., Inc. v. Morrison Mgmt. Specialists, Inc.*,
    905 F.3d 421 (6th Cir. 2018)................................................................8

*ZMC Pharmacy, LLC v. State Farm Mut. Auto. Ins. Co.*,
307 F.Supp.3d 661 (E.D. Mich. 2018).................................................2, 7

## Rules

Fed.R.Civ.P. 12(b)(6) ................................................................ 6, 20, 25

iii

## MOST CONTROLLING AUTHORITIES

*Daher v. Cuyahoga Cmty. Coll. Dist.,* No. 109719, 2021 WL 2588927 (Ohio App. June 24, 2021)

*Gonzalez v. Kovacs*, 687 F.App'x 466 (6th Cir. 2017)

*M.J. DiCorpo, Inc. v. Sweeney*, 634 N.E.2d 204 (Ohio 1994)

## STATEMENT OF ISSUES PRESENTED

1.    Whether Plaintiff's Complaint should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) because, even if his allegations are taken as true, Defendant's reports to the Prosecuting Attorney are absolutely privileged.

   Defendant Answers:   Yes

   Plaintiff Answers: No

   The Court Should Answer: Yes

2.    Whether Plaintiff's Complaint should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) because, even if his allegations are taken as true, they are insufficient to overcome the legal presumption that there was probable cause for the criminal indictments against him.

   Defendant Answers:   Yes

   Plaintiff Answers: No

   The Court Should Answer: Yes

3.    Whether Plaintiff's Complaint should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) because his allegations do not satisfy the requirement of plausibility.

   Defendant Answers:   Yes

   Plaintiff Answers: No

   The Court Should Answer: Yes

## INTRODUCTION

Plaintiff William Husel is a former physician who worked at hospitals in the Mount Carmel Health System ("MCHS"), a ministry of Defendant Trinity Health Corporation ("Trinity Health") in Columbus, Ohio. Since 2019, Husel has engaged in a litigation campaign against Trinity Health that has resulted (so far) in three lawsuits. This action alleges a single claim for malicious prosecution. Even if the allegations in his Complaint are taken as true, Husel's Complaint is legally deficient and should be dismissed in its entirety.

In late 2018, after initiating an investigation into Husel's practice of providing excessive doses of fentanyl and other pain medications to critically ill patients during the removal of breathing tubes, MCHS suspended and terminated Husel. As required by law, MCHS informed state and federal medical regulatory bodies of its investigation into and actions regarding Husel. MCHS also reported its ongoing investigation to the Franklin County, Ohio Prosecuting Attorney.

Husel now alleges that Trinity Health communicated with the Prosecutor to "procure" first-degree murder indictments against Husel, purportedly seeking to protect its own reputation. (*See, e.g.*, ECF No. 1, Complaint, ¶¶15(b), 17, 18, 20-21, 23-24)[1] Even taking Husel's allegations as true, as required for this Motion, the

---

[1] Unless otherwise noted, all paragraph citations are to Plaintiff's Complaint.

Complaint should be dismissed for three independent reasons. First, Trinity Health's statements to the Prosecutor are absolutely privileged and immune from civil liability. Second, Husel cannot overcome the presumption that probable cause existed for his indictment in the fully alleged context of a months-long investigation by the Prosecutor, the criminal court's denial of Husel's motion to dismiss the indictment based on allegations that the Prosecutor presented false or incomplete evidence to the Grand Jury, and the same court's denial of Husel's Ohio Criminal Rule 29 Motion for Acquittal at the close of the State's evidence at his criminal trial. Third, Plaintiff's claim is implausible because it is not supported by the factual allegations required by well-established case law.

## STATEMENT OF FACTS

Husel attached, referenced, and incorporated selectively excerpted portions of dozens of documents, including deposition transcripts from his other lawsuits, and the Court may consider those full materials on this Motion. *ZMC Pharmacy, LLC v. State Farm Mut. Auto. Ins. Co.*, 307 F.Supp.3d 661, 668 (E.D. Mich. 2018) (citing *Thomas v. Noder-Lover*, 621 F.App'x. 825, 829 (6th Cir. 2015)); *State Farm Mut. Auto. Ins. Co. v. Slade Healthcare, Inc.*, 381 F.Supp.3d 536, 552 (D. Md. 2019) (quoting *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015)).

Plaintiff is a former physician at MCHS, a health care system in Columbus, Ohio that is part of Trinity Health's ministry. (¶¶1-2, 34) In late 2018, MCHS

received internal reports that Husel administered significantly excessive doses of pain medications during palliative extubations, a procedure in which critically ill patients' breathing tubes are removed. (¶¶59-80) Dr. Larry Swanner, MCHS's Vice President of Medical Affairs, elevated the reports for "peer review," in which a panel of physicians investigates the events; he also initiated his own investigation. (¶67)

Dr. Swanner consulted several colleagues, who all agreed Husel's dosing was outside normal practice and merited peer review. (Ex. A: Swanner Dep., 37-44, 87-88 (excerpt at Compl. Ex. 15); ¶75)[2] Dr. Swanner consulted with Dr. David Ralston, Medical Director of the ICU, who agreed Husel's dosing was atypical. (Ex. A at 50-51) After removing Husel from the shift schedule, Drs. Swanner and Ralston met with Husel on November 26, 2018, and Husel acknowledged his dosing was "not typical of other critical care doctors," and "understood why questions would be raised." (¶¶82-85(a) and (f); *see also* Ex. A at 52-57)

Daniel Roth, Executive Vice President and Chief Clinical Officer for Trinity Health, became involved in the expanding investigation. (¶¶89-95) Dr. Roth asked Dr. Rosalie Tocco-Bradley, Chief Clinical Officer for Trinity Health Michigan and an experienced anesthesiologist, to conduct a review of the treatment of five patients. (Ex. B: Roth Dep. at 35-38 (excerpt at Compl. Ex. 5); Ex. C: Tocco-Bradley Dep. at

---

[2] Alphabetical exhibits refer to the exhibits attached to this Brief. Numerical Exhibits refer to the exhibits attached to Plaintiff's Complaint.

3

71-73 (excerpt at Compl. Ex. 26); ¶¶91, 94) She reported that Husel's doses were significantly excessive and potentially fatal. (Ex. C, Tocco-Bradley, 81, 94-95; Ex. 27) Although her report notes she was unable to view some medical records, it also states, "I am completely comfortable rendering an unequivocal opinion based on the materials sent to me." (Compl. Ex. 27, ECF No. 1-27, PageID.440)

Dr. Tocco-Bradley's finding concurred with every physician Dr. Swanner consulted. (Ex. A at 91-94) Accordingly, Husel's hospital privileges were summarily suspended. (Ex. B at 83-84) Husel's employment was then terminated. (Ex. D: McKibben Dep., 55-56 (excerpt at Compl. Ex. 20))

As required by law, MCHS informed the State Medical Board of Ohio ("Medical Board"), the Ohio Board of Nursing ("OBN"), the Ohio Board of Pharmacy, the Ohio Department of Health, the Joint Commission, the Centers for Medicare and Medicaid Services, and the National Practitioner Data Bank of its investigation and actions regarding Husel. (Ex. B at 593-94, 615) MCHS also notified the Franklin County Prosecuting Attorney of its investigation. (¶¶15(b), 17, 18, 20-21, 23, 24) Trinity Health's investigation continued after its reports to authorities, including a review of 19 additional patients by Dr. Tocco-Bradley. (¶¶152-55) She again concluded Husel's doses were inappropriate: "The dosing regimen he used, to my knowledge, is outside of typical standard of care even for most terminal patients." (Compl. Ex. 48, ECF No. 1-48, PageID.683)

4

The Medical Board summarily suspended Husel's medical license in January 2019, finding "clear and convincing evidence" he had violated Ohio law and his "continued practice presents a danger of immediate and serious harm to the public." (Ex. E: Notice of Summary Suspension) Husel elected not to contest these findings by voluntarily surrendering his medical license. (Ex. F: 5/11/22 Order)

After an extensive independent investigation by the Franklin County, Ohio Prosecutor's Office, which included directing the actions of the Columbus Police and hiring medical experts unrelated to Defendant, that Office presented its evidence to a Grand Jury in May 2019. The Grand Jury indicted Husel. (¶17) Husel moved to dismiss that indictment, arguing the Prosecutor presented inaccurate or incomplete evidence to the Grand Jury, but his Motion was denied. (Ex. G: Mot. to Dismiss; Ex. H: Order Denying Mot. to Dismiss)

Columbus elected a new Prosecutor in November 2020.[3] His office reviewed the Husel indictments and dismissed eleven murder counts. *Id.* ¶21. Husel was tried on the remaining 14 counts between February and April 2022. At the close of the State's evidence, Husel filed a Motion for Acquittal under Ohio Criminal Rule 29,

---

[3] Husel ignores this election, but the court may take judicial notice of then-Judge Tyeck's victory in the prosecutor election from the official General Election results. https://vote.franklincountyohio.gov/BOEL-website/media/Election-Info/2020/(3)%20General%20Election%20-%20November%203,%202020/(3)%20Election%20Results/Franklin-County-Only-Election-Summary_Group-Detail.pdf at 7.

but that Motion was denied because the State had presented evidence upon which a reasonable jury could convict Husel. (Ex. I, Denial of Rule 29 Motion) The jury ultimately acquitted Husel. (¶22)

## ARGUMENT

### PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED
### FOR FAILURE TO STATE A CLAIM UNDER FED.R.CIV.P. 12(b)(6)

#### Standard of Review

Dismissal under Fed.R.Civ.P. 12(b)(6) for failure to state a claim is warranted when, "considering 'all well-pleaded allegations in the complaint as true ... it appears beyond doubt that the plaintiff can prove no set of facts in support of its claims that would entitle it to relief.'" *Kostrzewa v. City of Troy*, 247 F.3d 633, 638 (6th Cir. 2001) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A plaintiff must allege more than bare conclusions of law, and the court "need not accept as true legal conclusions or unwarranted factual inferences." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation and quotation omitted).

"In ruling on a motion to dismiss, the Court may consider the complaint as well as (1) documents that are referenced in the plaintiff's complaint and that are central to plaintiff's claims, (2) matters of which a court may take judicial notice (3)

6

documents that are a matter of public record, and (4) letters that constitute decisions of a governmental agency." *ZMC Pharmacy*, 307 F.Supp.3d at 668.

Where a deposition transcript is "explicitly incorporated into the complaint by reference and … attached to the complaint," the court may consider it on a motion to dismiss. *Slade Healthcare*, 381 F.Supp.3d at 553 (quoting *Zak*, 780 F.3d at 606). A court may also "take judicial notice of other court proceedings without converting its motion into one for summary judgment." *Musleh v. Am. S.S. Co.*, 326 F.Supp.3d 507, 512 n.1 (E.D. Mich. 2018) (citation omitted); *Watermark Senior Living Ret. Comtys., Inc. v. Morrison Mgmt. Specialists, Inc.*, 905 F.3d 421, 425-26 (6th Cir. 2018) (considering testimony attached to motion to dismiss response).

## I.   TRINITY HEALTH'S STATEMENTS TO THE PROSECUTOR ARE ABSOLUTELY PRIVILEGED, BARRING PLAINTIFF'S CLAIM

"In Ohio, actions for malicious prosecution have been met with marked disfavor by courts" because "public policy favors the exposure of crime." *Dailey v. 1st Bank of Ohio*, No. 04AP-1309, 2005 WL 1483678 at *5 (Ohio Ct. App. June 23, 2005) (Ex. J: Unpublished Opinions). That public policy has a direct and dispositive effect here, because all of Trinity Health's alleged statements to the Prosecutor, which form the basis of Husel's claim, are protected by this absolute privilege.

"Upon certain privileged occasions where there is a great enough public interest in encouraging uninhibited freedom of expression to require the sacrifice of

the right of the individual to protect his reputation by civil suit, the law recognizes that false, defamatory matter may be published without civil liability." *Bigelow v. Brumley*, 37 N.E.2d 584, 588 (Ohio 1941). That absolute privilege applies to statements by a complaining witness to a prosecutor:

> We find that one of the established occasions of absolute privilege is directly involved in this case—the doctrine of absolute privilege in a "judicial proceeding." We agree with the court of appeals' conclusion that the doctrine of absolute privilege for statements made in a judicial proceeding applies in circumstances where, as here, an affidavit or statement is submitted to a prosecutor for purposes of reporting the commission of a crime. **As a matter of public policy, extension of an absolute privilege under such circumstances will encourage the reporting of criminal activity by removing any threat of reprisal in the form of civil liability.** This, in turn, will aid in the proper investigation of criminal activity and the prosecution of those responsible for the crime.

*M.J. DiCorpo, Inc. v. Sweeney*, 634 N.E.2d 204, 209 (Ohio 1994).[4] "The absolute privilege or 'immunity' for statements made in a judicial proceeding extends to every step in the proceeding, from beginning to end." *Id*. The absolute privilege bars civil liability for malicious prosecution claims, even when the defendant's statements were made in bad faith, with knowledge of their falsity, and with actual malice. *See Daher v. Cuyahoga Cmty. Coll. Dist.*, No. 109719, 2021 WL 2588927, at *4-5 (Ohio App. June 24, 2021).

This case surrounds a single set of allegations: Trinity's supposed statements

---

[4] Emphasis added throughout unless otherwise noted.

to the prosecutor, which Husel alleges included direct accusations of murder. (*See, e.g.*, ¶¶15(b), 17, 18, 20-21, 23-24) Even taking as true Husel's *false* allegations that Trinity Health knowingly, directly, and falsely accused him of murder, with all the motives charged in the Complaint, such allegations cannot support liability. Ohio's absolute privilege for communications with the prosecutor of an alleged crime defeats Husel's claim.

## II. THE COMPLAINT'S ALLEGATIONS, TAKEN AS TRUE, DO NOT PLEAD THE ABSENCE OF PROBABLE CAUSE

Under Ohio law, a claim for malicious prosecution in a criminal matter has three elements: "(1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused." *Bickerstaff v. Lucarelli*, 830 F.3d 388, 397 (6th Cir. 2016) (quoting *Trussell v. Gen. Motors Corp.*, 559 N.E.2d 732, 736 (Ohio 1990)). "The failure to prove even one element by a preponderance of the evidence is fatal." *Dailey,* 2005 WL 1483678, at *5). *See also Deoma v. Shaker Heights*, 68 Ohio App.3d 72, 77 (Ohio App. 1990) (citation omitted).

### A. Husel's Complaint Does Not Allege Sufficient Facts to Overcome the Presumption of Probable Cause Element of His Claim

Husel's claim is also subject to dismissal because he fails to sufficiently plead the absence of probable cause. "The lack of probable cause becomes the heart or the gist of a malicious prosecution claim." *Dailey*, 2005 WL 1483678, at *5. "Ohio

defines probable cause as 'a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged, not as the quantum of evidence necessary to convict a criminal defendant.'" *Harris v. United States*, 422 F.3d, 322, 327 (6th Cir. 2005) (citation omitted). The defendant's ill will or malice in making a report to criminal authorities has no bearing on the issue of probable cause. *Carmical v. McAfee*, 7 S.W.3d 350, 359 (Ark App. 1999) ("proof of … alleged malice is simply irrelevant.").

### 1.    The Grand Jury's Indictment of Husel on Twenty-Five Counts of First-Degree Murder Establishes Probable Cause

A Grand Jury in Franklin County, Ohio indicted Husel on twenty-five counts of first-degree murder in June 2019. (¶231) That action establishes a benchmark of probable cause for the indictments. "The finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause." *Gonzalez v. Kovacs*, 687 F.App'x 466, 469 (6th Cir. 2017) (quoting *Barnes v. Wright*, 449 F.3d 709, 716 (6th Cir. 2006)).

Where an indictment exists, there "is prima facie evidence of probable cause and a plaintiff must bring forward substantial evidence to rebut this." *Harris*, 422 F.3d at 327. "In order to rebut this presumption, plaintiff [is] required to produce 'substantial' evidence that the return of the indictment resulted from perjured

testimony or that the grand jury proceedings were otherwise 'significantly' irregular." *Reinoehl v. Trinity Universal Ins. Co.* (1998), 719 N.E.2d 1000, 1007 (Ohio App. 1998) (citation omitted). *See also Deoma*, 587 N.E.2d at 428; *Dailey*, 2005 WL 1483678, at *5.

Where the grand jury's indictment supplies the defendant with a presumption of probable cause, the plaintiff's complaint must allege specific facts to rebut that presumption to survive a motion to dismiss. *Gonzalez*, 687 F.App'x at 469-70. "The mere allegation that witnesses did not testify in good faith before a grand jury is insufficient to overcome the presumption of probable cause obtained upon the return of a grand jury indictment." *Garner v. Harrod*, 656 F.App'x 755, 759 (6th Cir. 2016); *see Miller v. Davis*, 653 F. App'x 448, 455 (6th Cir. 2016). Indeed, even when the grand jury relied on evidence that was later excluded from trial, the Sixth Circuit has held the indictment was not improperly procured. *Garner*, 656 F.App'x at 759.

To overcome the presumption of probable cause arising out of an indictment, the plaintiff must plead more than a "bare declaration of impropriety." *Bickerstaff*, 830 F.3d at 398 (citing *Harris*, 422 F.3d at 327). If the Complaint only pleads allegations amounting to the defendant's preference for an indictment, without proof of false information actually supplied to the grand jury, then the allegations are too "vague, conclusory and speculative" to overcome the presumption supplied by the indictment and the complaint must be dismissed. *Id.* at 397.

11

Husel's Complaint falls far short of citing sufficient facts to overcome the presumption of probable cause created by the Grand Jury indictments. As an initial matter, Husel alleges Trinity Health procured an indictment against him by providing false and misleading information to the Prosecutor, or by withholding exculpatory information, which in turn was presented to or withheld from the Grand Jury. (¶¶ 229, 231) Husel supplies no factual basis at all for this very serious allegation. His bare allegations in support of the claim are mere legal conclusions and insufficient to survive this motion. As the Sixth Circuit ruled in *Gonzalez*, a malicious prosecution complaint cannot rely on speculation to show that false or misleading testimony was presented to the grand jury. The complaint must point to the **specific** false or misleading testimony **heard** by the grand jury. *Gonzalez*, 687 F.App'x at 469-70. Husel does not remotely reach that bar.

The Sixth Circuit has already dealt with Husel's obvious rejoinder, that he cannot be expected to present facts in support of his claim because the secrecy of Grand Jury proceedings prevents him from doing so. "Although overcoming the presumption of grand-jury secrecy might be difficult, **grand-jury secrecy cannot act as an excuse to avoid the requirement of the Federal Rules of Civil Procedure that a complaint set forth facts that plausibly state a claim**." *Id.* at 470. "Other means of determining who testified at the grand-jury proceeding were available to [Husel], such as interviewing the [individuals accused of presenting

12

false or misleading testimony].” *Id.* Here, as in *Gonzalez*, Plaintiff “simply failed to investigate [his] claim thoroughly enough to plead the facts necessary to state a claim.” *Id.* Husel even relies on deposition testimony his counsel has taken in other lawsuits he has filed; but none of those witnesses were asked about their grand jury testimony.

Thus, Husel cannot satisfy his burden because he does not know what was presented to the Grand Jury. In *Dailey*, as in *Gonzalez*, the Ohio Court of Appeals found that the absence of a grand jury transcript made it impossible for plaintiff to prove irregularities in the proceedings. “[B]ecause the grand jury proceeding transcript is not in the record on appeal, there is no evidence that the grand jury proceeding was irregular. Accordingly, we look only to see if appellant met her burden of producing ‘substantial evidence’ that the indictment resulted from perjured testimony.” *Dailey,* 2005 WL 1483678, at *5. Because the plaintiffs in that case did not allege that the “indictment resulted from perjured testimony in either their complaint or appellate brief,” the court determined the presumption of probable cause had not been rebutted and affirmed the lower court’s judgment. *Id.* at *6.

### 2. Husel’s Attempt to Rely on Supposedly Exculpatory Material Fails.

Husel attempts to plead around the presumption of probable cause by asserting that Trinity Health withheld material information from criminal authorities, citing a

second report by Dr. Tocco-Bradley. (¶¶153-57) That report, Ex. 48 to the Complaint, was not exculpatory. Dr. Tocco-Bradley concluded that Husel's doses were "excessive," that some of the doses she reviewed "would in most patients result in … respiratory arrest in a non-ventilated patient," and that Husel's "dosing regimen … to my knowledge, is outside of typical standard of care even for most terminal patients." (ECF No. 1-48, PageID.682-683) Husel also references an outside consultant's report, but he cannot plead specific facts about its contents because he has never seen it: Defendants have withheld the report in the civil litigation as privileged. (¶¶165-66)

Moreover, even if the materials Trinity Health supposedly withheld from the government were exculpatory (and they are not), these allegations cannot defeat the presumption of probable cause. A prosecutor is not required to present potentially exculpatory evidence to the grand jury. *See Baron v. Andolsek*, 2004-Ohio-1159, ¶21 n.1 (Ohio Ct. App. 2004) (citing *Criss v. Kent*, 867 F.2d 259, 263 (6th Cir. 1988)).

Furthermore, Husel attempted to have the indictments dismissed on this same basis – that allegedly exculpatory material was not presented to the Grand Jury – but the Ohio criminal court rejected that effort. (Exs. G and H) Husel's Motion to Dismiss made many of the same arguments pled in his Complaint, including that "the prosecution presented evidence to the grand jury in a manner which substantially influenced their deliberations," such as presenting "only inculpatory'

14

evidence, refusing to present allegedly "exculpatory" evidence regarding a patient who survived Husel's excessive dosing, and providing supposedly "false information … to the grand jury" regarding what constituted a lethal dose of pain medication. (Ex. G, at 13) That Motion was denied. (Ex. H) Although not controlling in this case, the ruling is substantially probative of probable cause and further supports dismissal of Husel's claim.

The Criminal Court's denial of Husel's Ohio Crim. R. 29 Motion for Acquittal at the close of the State's evidence also strongly supports the presumption of probable cause in this case. *See Dressler v. Rice*, No. 1:15 cv 606, 2017 WL 3033877, at *12 (S.D. Ohio July 18, 2017) (quoting *Brunswick v. City of Cincinnati*, No. 1:10-cv-617, 2011 WL 4482373, at *5 (S.D. Ohio Sept. 27, 2011)) (trial court's denial of plaintiff's motion for acquittal after conclusion of state's evidence "may be viewed as a determination that the evidence is at least sufficient to demonstrate probable cause"). Notably, the Court in *Brunswick* also stated that "[t]he standard for demonstrating probable cause is a lesser burden than the standard for surviving a Rule 29 motion for acquittal." *Brunswick*, at *5. Both criminal court rulings favor the presumption already supplied by the Grand Jury's indictment.

### B. The Materials Selectively Quoted in Husel's Complaint Establish that the Prosecutor Conducted a Full Investigation Dependent on Evidence from Non-Trinity Health Sources

Husel's claim is also subject to dismissal because the predicate of his

15

argument – that Trinity Health supplied the entirety of the evidence the Prosecutor submitted to the Grand Jury – is disproven by the Complaint itself. Materials quoted, cited, and indelibly incorporated into the Complaint establish the independence of the Prosecutor's work and the multitude of sources the Prosecutor relied upon for evidence. The Prosecutor's investigation establishes that he did not, as Husel claims, rely solely on Trinity Health in establishing probable cause. He and his investigators relied upon patient records, the state's own retained experts, state regulators such as the Medical Board and OBN, and others. This supplies further reason to hold that Husel fails to plead around the presumption of probable cause.

### 1. The Office of Prosecutor Ronald O'Brien Conducted a Full Investigation into Husel's Pain Medication Dosing

Husel's cardinal allegation is that the Prosecutor and Grand Jury relied solely on evidence provided by Trinity Health in determining to indict him on twenty-five counts of first-degree murder. Indeed, Husel insists that Trinity Health's cooperation with criminal authorities was an elaborate conspiracy to frame him for murder. But Exhibits attached to Husel's Complaint disprove that story.

In Exhibit 61, the Franklin County Prosecuting Attorney outlined the means and method of its investigation, as well as the long list of detectives, prosecutors, and government agencies that were contributing to that investigation. Those cooperating agencies included the key state regulators of medical professions:

> An investigation has been ongoing since early December 2018 when Mount Carmel representatives contacted law enforcement. **Since that time a Sergeant and four detectives from the Homicide Cold Case Unit, as well as Prosecutor O'Brien and two Assistant Prosecutors, have been vigorously working on this case** with the full cooperation of Mount Carmel Hospitals and Trinity Health. Twenty-Nine deaths currently are being investigated. **There are dozens of witnesses that must be interviewed**, including doctors, nurses, pharmacists, and families of patients. **There are thousands of pages of Medical records that must first be obtained and reviewed by police and prosecutors but then by expert medical witnesses**. The investigation has been **coordinated with the State Medical Board of Ohio, Ohio Board of Nursing, and Ohio Board of Pharmacy**, all of which have separate licensing and regulatory functions. **The Prosecutor has also coordinated Medicaid funding issues with Attorney General Dave Yost**. The Division of Police and Prosecutor's office intend to conduct a thorough investigation of complex ethical, medical, and legal issues.

(ECF No. 1-6, PageID.758) Thus, *according to the Complaint*, the investigation that led to the indictments was lengthy and comprehensive, involved every corner of government, and included a review of medical records from a number of independent sources. The body of the Complaint quotes this statement, ¶207, but Husel ignores these independent sources for the Prosecutor's investigation.

The intensity of the investigation was also confirmed in the transcript of Prosecutor O'Brien's June 5, 2019 press conference announcing the indictment, which was also attached to and quoted in the Complaint. The transcript of that June 5, 2019 press conference is a climax for the Complaint, and Husel quotes it at length. (¶¶212-13.) But Husel uses misleading ellipses in his Complaint to make it appear the detectives relied on Trinity Health as their only source of expert medical

17

authority. The entire context of the Police Chief's statement shows this is not true (Huel omitted the bolded material from ¶212):

> A significant challenge unique to this investigation is that detectives needed to familiarize themselves with medical records, terminologies, practices, and procedures in order to understand the difference between treatment and criminal activity. This challenge was met with **the support of the Investigative Subdivision chain of command, assistance of the Franklin County Prosecutor's Office, as well as** the extraordinary cooperation provided by Mt. Carmel Healthcare.

*Id.* PageID.447-448. Husel also omits Prosecutor O'Brien's reiteration of the investigation's reliance on state agencies that oversee medical professionals in conducting their investigation. O'Brien cited those agencies as essential to obtaining the investigation: "I want to, also, credit the cooperation received by the medical, pharmacy, and nursing boards that without their key guidance to investigators, the outcome would be extremely difficult." *Id.* PageID.448.

That transcript also makes plain the arduous work that went into the investigation. Chief Quinlan of the Columbus Division of Police said, in part:

> I'm very thankful to the **many investigators who have worked tirelessly** assigned to this case to be sure the doctor is held to account. They have performed their duties professionally and in a highly compassionate manner.
>
> I'd like to provide the public with an overview of the investigation that culminated in today's indictments, presented by Mr. O'Brien and the Franklin County Prosecutor's Office. On December 7th, 2018, the Homicide Cold Case received information indicating numerous patients had died while being treated by Dr. William Scott Husel during the course of his employment at Mt. Carmel Health.

18

> **Detectives began investigating the circumstances** surrounding the death of at least 35 patients. And **this has been the primary driver of the Cold Case Homicide Unit for the past seven months**. Detectives **reviewed approximately 3,500 pages of documents, consulted with medical professionals, and conducted numerous interviews with witnesses and family members of the deceased**. [*Id.* PageID.447.]

Similarly, the Prosecutor, Mr. O'Brien, stated:

> [Mount Carmel] provided complete cooperation for anything that we asked, and as we all know from just reading news accounts, face potential liability and large -- large dollar amounts. But despite that, there was no hesitation whatsoever given by Mt. Carmel. **There was absolute, complete cooperation, not only from them but also from the medical board, the nursing board, and the pharmacy board,** as noted by the Chief. [*Id.* PageID.449.]

Husel subsequently quotes the criminal trial testimony of one of the Columbus Police Department detectives as apparent further support for the claim that no independent investigation was conducted by law enforcement. (¶219) The testimony quoted, again, does not support Husel's claim that Trinity Health supplied all evidence for probable cause. The detective made clear that there *was* an independent investigation. (Ex. K, 2/22/22 Criminal Trial Tr., at pp. 101, 185-86)

Thus, Husel's allegation that "[t]he Prosecutor's statements to the press along with the testimony of Detective Gillette make clear that the element of probable cause with respect to both Dr. Husel's intent as well as the impact of his care was supplied by Dr. Roth and Trinity" does not follow from the materials cited in support.

### 2. Prosecutor Tyack Conducted an Additional, Independent Investigation of Husel's Conduct After his Election

19

Prosecutor O'Brien faced a re-election campaign in 2020, and lost to his opponent, then-Judge G. Gary Tyack. Prosecutor Tyack dropped the indictments related to fourteen of Husel's patients, proceeding to trial on the remaining eleven. (¶218.) As a result, this is an unusual case in which two different Prosecutors independently determined that there was probable cause to pursue first-degree murder charges. Aware this undermines his narrative, Husel omits to mention that the Prosecutor who decided to seek dismissal of some of the indictments was a different person from the Prosecutor who sought them in the first place. (¶¶21, 218)

## III.   PLAINTIFF'S CLAIM DOES NOT SATISFY THE LEGAL TEST FOR PLAUSIBILITY

Even without the absolute privilege, and even if Husel adequately rebutted the presumption of probable cause (he does not), his malicious prosecution claim is still subject to dismissal because his Complaint does not satisfy the plausibility test of Fed.R.Civ.P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citation and quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Thus, a plaintiff must allege more than bare conclusions of law, and the court "need not accept as true legal conclusions or unwarranted factual inferences." *Diretv*, 487 F.3d at 476 (quoting *Gregory v.*

20

*Shelby Cnty.*, 220 F.3d 433, 446 (6th Cir. 2000)).

First, Husel's claim requires the Court to accept as plausible that Trinity Health believed it was protecting its reputation by framing one of its employees for murder. In particular, Husel claims Trinity Health sought to protect its reputation through a plot to use false information to procure dozens of first-degree murder charges against its employee, Husel; and that the reputational harm it was seeking to prevent was the public learning Trinity Health lacked policies on the use of opioids in palliative extubations.[5] Husel makes his theory explicit in ¶117:

> 116. The email [from Trinity's outside public relations firm, Jarrard] presented scenarios on how Trinity should respond based on what the facts turned out to be. It was clear that as of December 10, 2018, **Jarrard and the Trinity executives preparing the public relations campaign recognized the publicity risk that would occur if (as was actually the case) neither Mount Carmel nor Trinity had any policies or standards regarding the medications and dosages that should be used in connection with terminal withdrawals in an ICU setting**, and that there were no national standards either.
>
> 117. **This is why the email (and many subsequent documents) explicitly state that criminal indictments would be helpful to Mount Carmel and Trinity**: If the public could be convinced that Dr. Husel's and the nurses' actions were criminal, then the lack of policies at the hospital (surrounding the regulation and use of opioids) would not be perceived as the cause of any issues. **If the care the ICU had provided were to be publicly perceived as a crime, the absence of policies would be of limited relevance.**

---

[5] Husel is not correct on the underlying point here. Trinity Health *did* have policies on the use of opioids in situations like those at issue.

This underlying theory of Husel's case is implausible on its face. Husel argues that Trinity Health, as part of a planned strategy crafted by respected public relations professionals, falsely accused one of its own physicians of being a **serial killer**, then took public steps to ensure he would be indicted and tried on the charges, all to **prevent itself from suffering reputational harm and expensive wrongful death lawsuits**. Husel claims Trinity Health desired to "convince[]" "the public" that "the lack of policies at the hospital (surrounding the regulation and use of opioids) would not be perceived as the *cause* of any issues." (¶116 (emph. in Comp.)) This absurd theory does not follow from the alleged facts, even when taken as true. It is manifestly implausible that Trinity Health believed its reputation would suffer *less* from failing to discover an indicted and convicted serial killer than from an alleged absence of medication policies.

Husel compounds the implausibility of this scenario by alleging that Trinity Health informed the families of Husel's deceased patients of the circumstances of their deaths knowing, and intending, for those families to sue Trinity Health (which dozens of them did). Husel alleges, variously, that "Trinity was aware that these disclosures would unquestionably lead to lawsuits, and well aware that the lawsuits would bring the entire story that had been preparing into the press and the public at large," (¶171) and that "the calls to families were a fire that Defendant … deliberately lit to create an opportunity to launch their carefully crafted

22

communications blitz … aimed at ensuring that the public believe that Dr. Husel was a villain and the nurses and pharmacists were 'co-villains' who had murdered at least 25 patients, and that they should be prosecuted for their crimes." (¶174) These assertions, unsupported by alleged facts, are precisely the "legal conclusions [and] unwarranted factual inferences" that cannot support a claim. *Diretv*, 487 F.3d at 476 (quoting *Gregory*, 220 F.3d at 446. The phone calls to families were a routine practice at MCHS following irregularities in patient care, not Trinity Health's alleged harebrained plan to instigate lawsuits against itself. (Ex. B: Roth, 369-370)

Second, Husel's claim requires the Court to accept that, on at least six occasions, the safeguards woven into Ohio's criminal justice system failed to detect the absence of probable cause. He asks the Court to accept the following:

1. The first Franklin County Prosecutor who sought Husel's indictments, Ronald O'Brien, failed to conduct his own investigation into Husel's patient care before presenting the case to the Grand Jury, notwithstanding teams of detectives, prosecutors, and numerous state agencies (including the Medical Board and OBN) working on the case for months;

2. O'Brien either presented false medical information to the Grand Jury, or withheld exculpatory medical information, or both, in order to obtain indictments against Husel;

3. The Grand Jury, despite a lack of sufficient evidence to do so, indicted Husel;

4. Judge Michael J. Holbrook, Franklin County Court of Common Pleas, ignored the lack of probable cause when he denied Husel's Motion to Dismiss the Indictment;

23

5. After Judge Tyack was elected as the new Prosecutor in November 2020, he failed to conduct his own independent investigation, even as he dismissed fourteen of the original twenty-five charges; and

6. Judge Holbrook denied Husel's Motion for Acquittal at the close of the State's evidence, finding sufficient evidence for a jury to find Husel guilty of first-degree murder, even though the evidence in the prosecutor's possession did not meet even the low quantum of probable cause. (Ex. K, 3/29/22 Criminal Trial Tr. of Oral Motion for Acquittal, at 33)

In short, Husel's Complaint *at least* requires this Court to disregard the independent judgment of two Franklin County Prosecutors, a Grand Jury, and the Judge who presided over the criminal action, and find that there was never probable cause for the indictments against him. There is no factual basis alleged to reach this extraordinary conclusion, only Husel's own speculation and incendiary supposition.

Additionally, the necessary implication of Husel's conjecture that the Prosecutor and police conducted no independent investigation, despite public declarations to the contrary, is that these actors were dishonestly involved in a conspiracy to frame Husel. But Husel does not allege corruption or any other irregular conduct by these actors, let alone any facts in support of such allegations, anywhere in his Complaint.

Third, Husel's claim requires the conclusion that the independent regulatory bodies governing care medical care in Ohio, including the Medical Board and the OBN, were also involved in the contrivance of evidence against Husel. These agencies all found that Husel and the nurses acting at his direction provided

24

significantly excessive and potentially fatal pain medication. For example, the OBN found Husel's dosing was "outside the standard of care," "far in excess of any dosage required to [provide analgesic relief or comfort]," and "certainly had the *potential* to shorten [the patient's] life, perhaps appreciably." (Emphasis in original) (Ex. L at 86, 97, 104, 114, 121). Husel quotes as key evidence statements, discussed above, in which the Prosecutor credited these agencies with providing "key guidance to investigators." (*See e.g.,* ¶98; Ex. L) The notion that all these agencies were out to frame Husel stretches plausibility beyond the breaking point and warrants dismissal under Rule 12(b)(6).

## <u>CONCLUSION</u>

Defendant respectfully requests that the Court grant its Motion and dismiss Plaintiff's Complaint with prejudice.

Respectfully submitted,

**THE MILLER LAW FIRM, P.C.**

  */s/ E. Powell Miller (P39487)*
E. Powell Miller (P39487)
Kevin F. O'Shea (P40586)
950 W. University Dr., Suite 300
Rochester Michigan 48307
(248) 841-2200
epm@millerlawpc.com
kfo@millerlawpc.com

Dated: June 13, 2023                    *Attorneys for Defendants*

25

**CERTIFICATE OF SERVICE**

I certify that on the foregoing document was served on all parties or their counsel of record through the Court's CM/ECF system, which will send notification of this filing to all registered users or, if they are not registered users, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

*/s/ E. Powell Miller*